# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2909 | **DATE** | 11/26/2003 |
| **CASE TITLE** | Whisby-Myers vs. Kiekenapp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies Kiekenapp's motion to dismiss.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 01 2003 | |
| ✓ | Docketing to mail notices. | | date docketed | 15 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA WHISBY-MYERS, CHRISTOPHER )
MYERS, for themselves as next friends of )
KENNY WHISBY, KENSHELL WHISBY, )
and CHRISTIAN MYERS, )
 )
Plaintiffs, )
 )
vs. ) Case No. 03 C 2909
 )
ROBERT KIEKENAPP, )
 )
Defendant. )

DOCKETED
DEC 0 1 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Lisa Whisby-Myers and her husband Christopher Myers brought this action on their own behalf and on behalf of their children Kenny Whisby, Kenshell Whisby, and Christian Myers against defendant Robert Kiekenapp, alleging violations of 42 U.S.C. § 1982 and the Fair Housing Act, 42 U.S.C. §§ 3604 & 3617, as well as state law claims for assault, civil hate crime, and intentional infliction of emotional distress. Kiekenapp has moved to dismiss plaintiffs' federal claims for failure to state a claim, to strike their requests for injunctive relief and prejudgment interest, to dismiss the complaint for failing to contain a separate and proper prayer for relief and the state claims for lack of a viable federal claim, and to strike certain unnumbered narrative paragraphs in the complaint. On October 8, 2003, the Court advised the parties that the motion to dismiss was denied. The purpose of this Opinion is to explain the Court's ruling.

**Facts**

We take the following from plaintiffs' complaint, the allegations of which we take as true for purposes of Kiekenapp's motion.

At the times relevant to this lawsuit, the plaintiffs, who are African-American, lived in the same Calumet City neighborhood as Kiekenapp, who is Caucasian. Plaintiffs were the only African-American family on the block.

Around 10:15 p.m. on May 1, 2001, Whisby-Myers was driving through her neighborhood on her way to work. As she passed Kiekenapp's home, she heard a loud explosion that rocked her vehicle. She exited her car and was confronted by Kiekenapp, who came running toward her from his home. Kiekenapp allegedly swung his arms and screamed racial epithets at Whisby-Myers, calling her "black bitch" and "n----- bitch."

Officers of the Calumet City police department, having heard the explosion, showed up at Kiekenapp's home shortly thereafter. Kiekenapp allegedly told the police that he "tried to blow [Whisby-Myers'] ass up" and would "do it again," and that the police should "take this n----- bitch to jail," and also claimed that Whisby-Myers was "not registered." The police searched Kiekenapp's garage and found numerous weapons and bomb-making materials. The police department's bomb squad later identified the device that Kiekenapp detonated as a U.S. Military M21 Flash Simulator.

After the confrontation, Whisby-Myers returned to her home, located directly across the street from Kiekenapp's home, and called her workplace to advise that she would not be coming in that evening. Because the plaintiffs feared future attacks, the Whisby-Myers children were told not to play in front of the house, and the family and its visitors stopped parking their cars in

2

front of the home. Plaintiffs allege that they were humiliated, embarrassed and emotionally and economically harmed by Kickenapp's actions, and that their injuries included "deprivation of their right to equal housing opportunities." Cmpl. ¶25.

## Discussion

A Rule 12(b)(6) motion is designed only to "test the sufficiency of the complaint, not to decide its merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court must take the facts alleged by the plaintiff as true and must construe all allegations in the complaint in the light most favorable to the plaintiff. *E.g., Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1998). A complaint may be dismissed only if it is clear that the plaintiff can prove no facts in support of her claims that would entitle her to relief. *E.g., Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998).

### A. Section 1982 claim

Count One is a claim under 42 U.S.C. § 1982, which provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Kickenapp argues that § 1982 bars racial discrimination only in property transactions such as the sale or rental of property. Though the Seventh Circuit has not addressed this issue, this Court agrees with those courts that have rejected this proposed limitation on the statute's coverage.

Section 1982's reference to the right to "hold" property indicates that it is not confined to property transactions. *See Stirgus v. Benoit*, 720 F. Supp. 119, 123 (N.D. Ill. 1989). When interpreting a statute, a court must attempt to provide meaning to every word in the statute. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). To give effect to each term in the statute,

3

the term "hold" must have a meaning different from the terms "purchase," "lease," "sell," and "convey." *Bryant v. Polston*, No. IP 00-1064-C, 2000 WL 1670938, at *6 (S.D. Ind. Nov. 2, 2000). We agree with those courts that have concluded that section 1982's protection of the right "to hold" property includes the right to use one's property. *See United States v. Brown*, 49 F.3d 1162, 1167 (6th Cir. 1995) (Jewish synagogue members who were scared to come and go from the synagogue as a result of a drive-by shooting were deprived of their right to use property); *United States v. Greer*, 939 F.2d 1076, 1091 (5th Cir. 1991) (finding that the phrase "to hold" under Section 1982 can mean "to use" property), *aff'd en banc*, 968 F.2d 433 (5th Cir. 1992); *Bryant*, 2000 WL 1670938, at *5-6 (harassing and intimidating conduct by neighbors prevents individuals from holding property); *Byrd v. Brandenburg*, 922 F. Supp. 60, 64 (N.D. Ohio 1996) (allegations of racially motivated firebombing were sufficient to state claim for inability to hold property under § 1982); *United States v. Three Juveniles*, 866 F. Supp. 934 (D. Mass 1995) (slashing of tires and carving of an anti-Semitic slogan on a car is prohibited by § 1982, which protects the use of a motor vehicle); *Johnson v. Smith*, 810 F. Supp. 235, 237-38 (N.D. Ill. 1992) (burning of cross on plaintiffs' lawn prevented plaintiffs from using property as protected by § 1982); *Stirgus*, 720 F. Supp. at 122 (firebombing of home prevented individuals from holding property in violation of § 1982).

As the Supreme Court has stated, section 1982 is concerned with "the right of black persons to hold and acquire property on an equal basis with white persons and [to provide for] the right of blacks not to have property interests impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981). Kiekenapp's narrow reading of section 1982 is at odds with the broad scope of the protection intended by Congress when it adopted the statute.

*See Jones v. Mayer Co.*, 392 U.S. 409, 437, 443 (1968) (finding that the language of § 1982 reflects Congress' desire to secure for black citizens the "right to live wherever a white man can live.")

To state a claim under § 1982, plaintiffs must allege that the defendant had a racial animus, intended to discriminate against the plaintiff, and deprived the plaintiff of protected rights because of the plaintiff's race. *Kundacina v. Concession Services, Inc.*, No. 96 C 4422, 1997 WL 222943, at *6 (N.D. Ill. Apr. 30, 1997). Plaintiffs have alleged all the elements of a section 1982 claim. Whisby-Myers alleges that Kiekenapp had racial animus by asserting that he called her a "black bitch" and a "n----- bitch" after she exited her car.[1] *Id.* ¶ 15. Kiekenapp's intent to discriminate against plaintiffs is adequately alleged in the assertions that he detonated the bomb as Whisby-Myers passed his home, *id.* ¶ 15, and he told police "I tried to blow her ass up and I'll do it again." *Id.* ¶ 17. Finally, plaintiffs adequately allege that Kiekenapp deprived plaintiffs of rights protected by § 1982: they allege they feared future attacks, their children could no longer play in the front yard of their home, and plaintiffs and their visitors could not park on the street in front of their home. Cmpl. ¶ 24. Count One states a claim.

## B. Fair Housing Act claims

In Count Two, plaintiffs seek damages in violation of the Fair Housing Act, 42 U.S.C. §§ 3604 & 3617. Kiekenapp argues that this claim is deficient because plaintiffs can sue under these provisions only for prohibited discrimination in real estate transactions, and that the Act's prohibitions do not apply to single family homes. The Court disagrees.

---

[1] Kiekenapp claims that to satisfy the first requirement of Section 1982 Whisby-Myers must allege the defendant's racial animus as exhibited through his statements or actions that occurred *prior* to the alleged discriminatory act. This is absurd. Kiekenapp's use of racial epithets contemporaneously with the alleged bombing certainly would permit a jury to conclude that he already had such racial animus

The purpose of the Fair Housing Act is to ensure fair and equal housing opportunities and to eliminate segregated housing throughout the United States. 42 U.S.C. § 3601; *see South Suburban Housing Center v. Board of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991). Section 3613, the provision of the Act that authorizes the filing of suit by a private person, states that an aggrieved person can sue "after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter ... to obtain appropriate relief ...." 42 U.S.C. § 3613(a)(1)(A). Kiekenapp argues that the use of the phrase "discriminatory housing practice" reflects that sections 3604 and 3617 apply only to real estate *transactions*. This is a *non sequitur*. A "discriminatory housing practice" is defined in the Act to include conduct that is prohibited under sections 3604 and 3617. 42 U.S.C. § 3602(f). Thus we must look to those provisions to determine the scope of their coverage.

Section 3604(a) makes it unlawful

> to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of or *otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604 (emphasis added). Kiekenapp first argues that the Act does not apply to single family homes like the one in which the plaintiffs live. He relies on section 3603(b), which states that "[n]othing in section 3604 of this title (other than subsection (c)) shall apply to ... any single-family house sold or rented by an owner," provided that certain other conditions are met. 42 U.S.C. § 3603(b). First of all, this exemption is limited to section 3604, and would not preclude plaintiffs' claim under section 3617 even were the Court to read the exemption in the manner urged by Kiekenapp. *See United States v. Pospisil*, 127 F. Supp. 2d 1059, 1064 (W.D. Mo. 2000). But the Court does not agree with Kiekenapp's reading of section 3603(b). The

exemption's text indicates that it was meant by Congress to be limited to actions by a homeowner in selling or renting his home, not post-sale actions by a non-owner (like Kiekenapp) designed to deprive a homeowner of the use of the home. The legislative history of the provision leads to a similar conclusion. *See, e.g., Hogar Agua y Vida en el Desierto v. Suarez-Medina*, 36 F.3d 177, 184-85 (1st Cir. 1994); *Singleton v. Gendason*, 545 F.2d 1224, 1226-27 (9th Cir. 1976). *Accord, Pospisil*, 127 F. Supp. 2d at 1064. Because the Fair Housing Act is to be given a "generous construction" in view of its purpose, *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972), and because the Act's exemptions, for the same reason, are to be narrowly construed, *Hogar Agua y Vida*, 36 F.3d at 181 (citing cases), the Court concludes that §3603(b) does not exempt the activity alleged in this case.

Kiekenapp's second argument regarding plaintiffs' section 3604 claim is similar to his argument regarding the scope of section 1982; he contends that the statute bars discrimination only in connection with a real estate transaction. Again, the Court disagrees. As the Seventh Circuit and other courts have concluded, the prohibition of section 3604 extend beyond mere sales and rentals of real estate. *See, e.g., NAACP v. American Family Mutual Ins. Co.*, 978 F.2d 287, 301 (7th Cir. 1992) (insurance redlining); *National Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America*, 208 F. Supp. 2d 46, 58 (D.D.C. 2002) (discriminatory insurance redlining prohibited under § 3604); *Pospisil*, 127 F. Supp. 2d at 1064 (plaintiffs stated a claim under § 3604 by alleging that defendants firebombed the front porch of plaintiffs' home, making it unavailable to them); *Woods v. Foster*, 884 F. Supp 1169, 1174-75 (N.D. Ill. 1995) (sexual harassment can make a homeless shelter unavailable under § 3604). As in those cases, the plaintiffs in this case have alleged that their dwelling was made unavailable to them, at least in

certain respects, because of racially discriminatory conduct.

Kiekenapp likewise argues that claims under section 3617 are limited to those involving discriminatory practices in real estate transactions. Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604." 42 U.S.C. § 3617. Courts have consistently applied section 3617 to "threatening, intimidating, or extremely violent discriminatory conduct designed to drive an individual out of his home." *See Halprin v. The Prairie Single Family Homes of Dearborn Park Assoc.*, 208 F. Supp. 2d 896, 903-04 (N.D. Ill. 2002) (citing cases). Illustrative cases have involved acts such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails. *Id.*; *see also, Bryant*, 2000 WL 1670938, at *3 (threatening acts involving a shotgun sufficient to state a claim under § 3617); *Johnson*, 810 F. Supp. at 238-39 (cross burning and breaking of house windows sufficient to state a claims under § 3617); *Stirgus*, 720 F. Supp. at 123 (firebombing of home to intimidate plaintiff was sufficient for a § 3617 claim); *Seaphus v. Lilly*, 691 F. Supp. 127, 139 (N.D. Ill. 1988) (allegations of assault and attempted arson stated a § 3617 claim); *Stackhouse v. DeSitter*, 620 F. Supp. 208 (N.D. Ill. 1985) (accusations of firebombing of family's car to drive them from the neighborhood stated a claim under § 3617); *Byrd*, 922 F. Supp. at 64-65 (throwing of a Molotov cocktail onto a front porch was sufficient to violate § 3617). Kiekenapp's alleged detonation of an explosive device simulator to intimidate the plaintiffs is of like kind to the conduct held in these cases to give rise to a claim under section 3617.

For these reasons, the Court rejects Kiekenapp's motion to dismiss plaintiffs' Fair

Housing Act claims.[2]

## C. Standing to sue under section 1982 and the Fair Housing Act

Kiekenapp next argues that none of the plaintiffs have standing to sue under section 1982 or the Fair Housing Act. As the Seventh Circuit has recognized, the first consideration for standing is whether the plaintiffs can satisfy the "case or controversy" requirement of Article III of the United States Constitution. *Penny Saver Publications, Inc v. Village of Hazel Crest*, 905 F.2d 150, 154 (7th Cir. 1990) (citing *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 955 (1983)). For a case or controversy to exist under Article III, the plaintiffs must have suffered an "actual or threatened injury" that is fairly traceable to the defendant's allegedly illegal conduct and will likely be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The injury must be concrete, distinct and palpable, and actual or imminent. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citing *Warth*, 422 U.S. at 501).

In addition, to have standing to sue under a statute, the plaintiff must show that the interest he or she seeks to protect is arguably within the "zone of interests" protected by the statute. *E.g., Association of Data Processing Services Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970). Finally, the plaintiff must have "such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Watts v. Boyd Properties*, 758 F.2d 1482

---

[2] Kiekenapp suggests that because plaintiffs have alleged that they are "African-American," they have merely identified their national heritage, and not race, as required to state a claim under sction 1982 and the Fair Housing Act. Nonsense. First of all, plaintiffs squarely allege in paragraph 29 of the complaint that they are "black." Second, the term "African-American" is commonly used to refer to black persons living in the United States.

(7th Cir. 1985) (quoting *Warth*, 422 U.S. at 499-500). If individual rights cannot be vindicated, the right to claim relief rests only on the rights of third parties, or the decision will merely address the generalized interests of concerned bystanders, the plaintiff lacks standing to sue. *Valley Forge Christian College*, 454 at U.S. 464, 473-74 (1982); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979).

All of the plaintiffs plainly have standing to sue under both section 1982 and the Fair Housing Act. They all claim to have suffered an injury resulting from Kiekenapp's alleged conduct that prevented them from using their property to its full extent and caused them humiliation, embarrassment, emotional distress, and financial loss. There is no serious dispute that these injuries could be redressed by a favorable judicial decision. Finally, the plaintiffs are all within the "zone of interests" that section 1982 and the Fair Housing Act are designed to protect. *See City of Memphis*, 451 U.S. at 122 (section 1982 is designed to protect "the right of black persons to hold and acquire property on an equal basis of white persons"); 42 U.S.C. § 3601.

In addition, Whisby-Myers and her husband have standing to sue on behalf of their children. Under Federal Rule of Civil Procedure 17(c), Whisby-Myers and her husband have the authority to sue on their children's behalf as "next friends." Kiekenapp suggests that Whisby-Myers' husband and children cannot sue because they were not within the "zone of physical danger" in relation to the actual alleged discriminatory activity. In this regard, however, Kiekenapp improperly relies on what a plaintiff must show by way of injury to prevail on a particular type of state law tort claim, which is not part of the Article III standing inquiry. In any event, knowledge that someone has physically attacked one's spouse or parent due to their race,

10

in an effort to drive them out of the neighborhood, quite plainly gives the other family members standing to sue under § 1982 and the Fair Housing Act, as a reasonable person would understand to construe such acts as having been designed to drive out the entire family, not just one member.

### D. Injunctive relief and prejudgment interest

Kiekenapp seeks to strike plaintiffs' claims for injunctive relief and prejudgment interest. He argues that to obtain injunctive relief, a plaintiff must show that the defendant's past conduct indicates the likelihood of further future violations. He also argues that prejudgment interest is not recoverable on an "unliquidated damage claim" like the one asserted in the instant case. These arguments are premature. The Court cannot conclude at this stage of the litigation that plaintiffs will not be able to prove facts that would entitle them to some form of injunctive relief, nor can it hold that prejudgment interest is outside the realm of possibility. *See Quinn v. National R.R. Passenger Corp.*, No. 97 C 3529, 1997 WL 790738, at *8 (N.D. Ill. Dec. 18, 1997).

### E. State law claims

Kiekenapp argues that plaintiffs' state law claims must be dismissed for lack of subject matter jurisdiction because they have not stated cognizable federal claims. Because the Court has denied Kiekenapp's motion to dismiss the federal law claims, this argument is without merit.[3]

---

[3] In his reply, Kiekenapp argues that plaintiffs have failed to state claims under Illinois law for assault, civil hate crime, and intentional infliction of emotional distress. Because he did not address this issue in his opening memorandum, Kiekenapp forfeited the point, and the Court will not consider the untimely argument in his reply.

11

## F. Kiekenapp's remaining arguments

Finally, Kiekenapp argues that because the plaintiffs assert "one lump prayer" for relief as to their first four claims, those claims should be dismissed. He also argues that the plaintiffs' four "unnumbered narrative paragraphs" preceding the statement of jurisdiction should be stricken as they are "free form" and are "duplicative, unanswerable and confusing surplusage." However, as "technical forms of pleading or motions" are not required by the Federal Rules of Civil Procedure, Fed. R. Civ. P 8(e)(1), and a plaintiff's complaint need only allege a basis for relief, *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002), the Court rejects Kiekenapp's arguments in this regard.

## Conclusion

For the foregoing reasons, this Court denies Kiekenapp's motion to dismiss.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 26, 2003